# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

No. 15-3915



IN RE TARGET CORPORATION CONSUMER DATA SECURITY BREACH
LITIGATION

MDL No. 14-2522 (PAM/JJK)

SAM A. MIORELLI,

Objector/Appellant

---

Appeal by Objector from Order Granting Final Approval of Class Action
Settlement, Judge Paul A. Magnuson

---

## OBJECTOR'S RESPONSE TO PLAINTIFFS/APPELLEES' MOTION TO DISMISS AND CROSS MOTION TO STRIKE IRRELEVANT AND DEFAMATORY MATERIALS

---

Sam A. Miorelli (*pro se*)
764 Ellwood Avenue
Orlando, FL 32804
Telephone: 352-458-4092

Objector

1

Pursuant to Federal Rule of Appellate Procedure 27(a)(3), Objector Sam A. Miorelli, appearing *pro se*, respectfully responds to Appellees' Motion to Dismiss Non-Class Member Sam A. Miorelli's Appeal for Lack of Jursidiction ("Appellees' Motion") and requests that Appellees' Motion be denied.

This Response is timely filed as service of Appellees' Motion was served upon Objector Miorelli by First Class Mail, which did not bear a postmark, on December 31, 2015. (Declaration of Sam A. Miorelli in Support of Response to Motion to Dismiss "Miorelli Declaration" at ¶ 1 and Exhibit 1). Objector Miorelli, as a *pro se* litigant in this case, was not served an electronic copy of Appellees' Motion as he is not a registered user of this Court's CM/ECF system.

## Grounds for Denial of Appellees' Motion

1. <u>Factual and Procedural Background</u>

Objector Miorelli agrees with Appellees' characterization of the procedural posture of the case as set forth in Paragraphs 1-3 of Appellees' Motion. However, contrary to Appellees' characterization, Objector Miorelli is, in fact, a member of the Class as certified by the District Court.[1]

---

[1] Objector Miorelli agrees with Appellees' quote of the District Court's Order Certifying a Settlement Class, Preliminarily Approving Class Action Settlement and Directing Notice to the Settlement Class 2-3, ECF No. 264:

> All persons in the United States whose credit or debit card information and/or whose personal information was compromised as a result of the data breach that was first

2

Objector Miorelli made a purchase using his American Express credit card on December 16, 2015 at a Target store in Orlando, Florida. (ECF No. 643-3). Shortly after the Target data breach, that credit card was replaced by American Express due to fraudulent charges. *Id.*

Throughout the litigation the timeframe of the breach in question was from November 27, 2013 to December 17, 2013. The First Amended Complaint (FAC) did not make the fine 56-customer distinction which Appellees' Motion suggests, rather, it says

> Finally, on December 15, 2013, Target began purging its computer system of the hackers' malware, and after two weeks of uninterrupted data collection (the groundwork for which had been laid weeks before that), Target suspended most of the hackers' ability to collect customer billing and personal information. Target has stated, however, in its SEC Form 10-K dated February 1, 2014, that "[p]ayment card data used in transactions made by 56 additional guests in the period between December 16 and December 17 was stolen prior to our disabling malware on one additional registrar that was disconnected from our system when we completed the initial malware removal on December 15.

(ECF No. 258, ¶ 170). Unlike Appellees' characterization of their own complaint, the FAC never limits itself to exclude *any* Target customers making purchases after December 15, 2013. The FAC also does not limit its post-December 15, 2013

> disclosed by Target on December 19, 2013. Excluded from the class are the Court, the officers and directors of Target, and persons who timely and validly request exclusion from the Settlement Class.

3

scope to the 56 customers mentioned in Target's February 1, 2014 SEC Form 10-K.

Additionally, at the settlement stage, Target and the Appellees agreed that the Class consisted of "All persons in the United States whose credit or debit card information and/or whose personal information was compromised as a result of the data breach that was first disclosed by Target on December 19, 2013, excluding the Court and the officers and directors of Target." (ECF No. 358-1 ¶ 1.1).

Target and Appellees also agreed on the exact language and formatting of the Detailed Class Notice in the Settlement Agreement. *Id.* at Exh. 3. Approximately 16-point, bold font at the top of the first page of the Detailed Notice reads "If You Shopped at Target from November 27 through December 18, 2013 or Received Notice That Your Personal Information Was Compromised, You Could Get Money from a Data Breach Settlement." *Id.* at p. 56. On the second page of the Detailed Notice, under the heading "Basic Information" and the sub-heading "2. What is this lawsuit about?" the question is answered:

> On December 19, 2013, Target announced that it had been the victim of a criminal attack on its computer network by third-party intruders who stole payment card data from Target shoppers who shopped at Target from November 27 through December 18, 2013. The intruders also stole personal information, such as email and home addresses from other Target customers. Plaintiffs claim that Target did not adequately protect their payment card data and personal information and that Target delayed in providing notice of the data breach.

4

> Target denies any wrongdoing and no court or other entity has made any judgment or other determination of any wrongdoing.

*Id.* at p. 57. At the bottom of the second page of the Detailed Notice (and continuing to the third page), under the heading "Who Is Part Of The Settlement?" and the sub-heading "5. How do I know if I am part of the settlement?" the question is answered:

> You are a member of the Settlement Class and affected by the settlement if your credit/debit card information and/or your personal information was stolen as a result of the Target Data Breach.
>
> You are a member of the Settlement Class if:
>
> • You shopped at a Target store and used your credit or debit card from November 27 through December 18, 2013;
>
> • You provided your contact information to Target any time before December 18, 2013; or
>
> • Your bank, credit card company, or other financial institution issued you a new credit or debit card shortly after December 2013; and the letter accompanying the new card said that your old card may have been compromised.
>
> If you received a notice directly about the Target Data Breach, you are a Class Member.
>
> Excluded from the settlement are:
>
> • Officers and directors of Target;
>
> • The Court and any judicial staff involved in the lawsuits; and

5

• Any Class Member who opts out (*see* Question 12).

*Id.* at p. 57-58.

In Exhibit 4 to the Settlement Agreement, Target and Appellees agreed on the exact language and formatting of an advertisement to be used in notifying the Class about the Settlement. *Id.* at Exh. 4. This advertisement begins with approximately 15-point bold font stating "If You Shopped at Target from November 27 through December 18, 2013 or Received Notice That Your Personal Information Was Compromised, *You Could Get Money from a Data Breach Settlement.*" *Id.* (emphasis as in original). The advertisement continues under the bold heading "Who is included in the Settlement?" with the answer:

> You are a member of the Class if: (1) you shopped at a Target store and used your credit or debit card from November 27-December 18, 2013; (2) you provided your contact information to Target before December 18, 2013; or (3) your bank, credit card company, or other financial institution issued you a new credit or debit card shortly after December 2013 and informed you that your old card may have been compromised. If you received a notice about the Target Data Breach, you are a Class Member.

*Id.*

Target and Appellees also agreed on the exact language and formatting of a postcard notice, which began with approximately 20-point bold font stating "If You Shopped at Target from November 27 through December 18, 2013 or Received Notice that Your Personal Information Was Compromised, *You Could*

6

*Get Money from a Data Breach Settlement.*" *Id.* at Exh. 5 (emphasis as in original).

The body of the postcard contained the following as its second paragraph:

> **Who is included in the Settlement?** You are a member of the Class if: (1) you shopped at a Target store and used your credit or debit card from November 27-December 18, 2013; (2) you provided your contact information to Target before December 18, 2013; or (3) your bank, credit card company, or other financial institution issued you a new credit or debit card shortly after December 2013 and informed you that your old card may have been compromised. If you received a notice about the Target Data Breach, you are a Class Member.

*Id.* (emphasis as in original).

These Exhibits are explicitly incorporated into the Settlement Agreement. *Id.* at ¶1.1. The Settlement Agreement also contains the following integration clause: "**13.1 Entire Agreement.** This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement." *Id.* at ¶ 13.1.

The Settlement Agreement is the first filing in the record where Appellees agreed to a definitive end date for Class membership of December 18, 2013. The Settlement Agreement and its associated exhibits makes no mention of a difference between a Target customer making a purchase on December 15, 2013 compared to one making a purchase on December 16-18, 2013. No declaration or argument in support of the position advocated by Appellees appears in the record until after Objector Miorelli's first filing.

7

2. <u>Mr. Miorelli is a member of the Class and the District Court committed error when it ruled otherwise.</u>

On the plain meaning of the terms of the Settlement Agreement and its incorporated Exhibits, Objector Miorelli is a member of the Class. Appellees' Motion alleges that the post-objection declarations of the Target's lawyer and Class Counsel provided the basis for the Court to find Objector Miorelli was not a Class Member. These declarations cannot change the meaning of the Settlement Agreement as they constitute parol evidence to a plain and unambiguous written instrument which itself includes an integration clause. *Starling v. Valmac Industries, Inc.*, 589 F.2d 382, 386 (8th Cir. 1979) ("Concisely stated, the parol evidence rule is that when competent parties enter into a contract and incorporate the terms of their agreement into a plain and unambiguous written instrument, parol evidence of prior negotiations, representations, promises or understandings is not admissible for the purpose of varying or contradicting the terms of the written instrument.") Consequently, the ruling of the District Court that Objector Miorelli is not a class member was error.

The Settlement Agreement also defines Objector Miorelli as a class member due to the fact that his American Express card was replaced due to credit card fraud shortly after the Target data breach. The District Court did not address this at all in its ruling, despite Objector Miorelli's sworn declaration and argument.

8

Appellees' Motion, consequently, can show no evidence in the record supporting their contention that they arrive before this Court with a record replete with evidence of Objector Miorelli's lack of standing. In fact, the opposite is true: there is no record whatsoever that the District Court even considered the fact (even if it agreed with Appellees regarding the dates of purchase) that the terms of the Settlement Agreement also make Objector Miorelli a class member due to American Express replacing his card shortly after the data breach due to fraud.

3. Appellees' Motion is barred by binding Supreme Court precedent.

Dismissing the appeal on the grounds sought by Appellees' Motion would violate ancient and binding Supreme Court precedent. Appellee's Motion is entirely predicated upon arguing that Objector Miorelli lacked standing before the District Court. Black letter law dating back to the Civil War holds that "[i]f the question of the jurisdiction of the circuit court were still open to dispute, it would be a question to be decided on appeal . . ." *Nashua & L.R. Corp. v. Boston & L.R. Corp.*, 51 F. 929, 930 (1st Cir. 1892) (rejecting a motion to dismiss an appeal to the appellate court on the basis of the district court's ruling that the appellant lacked standing). The Supreme Court has explained the rule similarly:

> Upon a motion to dismiss an appeal, upon the ground of
> a want of jurisdiction originally in the District Court, the
> question of jurisdiction in that court is a proper one for
> appeal to this court, and for argument when the case is
> regularly reached. This court [has] jurisdiction on such an

9

appeal. The motion to dismiss, upon that ground, must
therefore be overulled [sic].

*Nelson v. Leland*, 63 U.S. 48, 49, 22 How. 48, 49 (1859). Appellees' Motion is just

the sort of motion contemplated in *Nelson*: it argues for dismissal of the appeal on

the ground that Objector Miorelli supposedly lacked standing before the District

Court and entirely predicated on the District Court's ruling thereupon. *Nelson*

directly teaches that such a dismissal is improper but instead standing should be

addressed by this Court in its ordinary consideration of the appeal.

Objector Miorelli does not argue against the rule that jurisdiction be decided

by a court prior to proceeding to the merits question. *See Steel Co. v. Citizens for a*

*Better Environment*, 523 U.S. 83, 93-95 (1998). However, deciding jurisdiction

first, even if such a decision were to go against Objector Miorelli, does not require

the *appeal itself* be dismissed. Rather, *Steel Co.* only requires that the appellate

court consider and decide the jurisdictional issue prior to Objector Miorelli's other

arguments. *Steel Co.* does not change the rule in *Nelson* which makes dismissal of

the appeal for lack of jurisdiction improper when jurisdiction is the issue of

contention in the appeal, as it is here.

The cases cited by Appellees' Motion also do not support dismissal. In

*Feder v. Electronic Data Systems Corp.*, 248 F. Appx. 579 (5th Cir. 2007), the

objector's appeal was dismissed when the objector (a) did not submit a proof of

claim form, (b) provided none of the evidence required by the claim form to

10

support his contention that he bought or sold EDS stocks during the class period,
(c) did not provide the required information as to the number or type of EDS
securities the objector claimed to have dealt in the period, and (d) also did not
provide this information in his objection. *Id.* at 581. The Fifth Circuit added:

> We do not, in this opinion, venture to set a bar for the
> quantum of proof necessary to establish class
> membership for the purpose of objecting to a settlement.
> Rather, we simply note that the right to object to
> settlement in a securities class action must rest on
> something more than the sort of bare assertions of stock-
> ownership made by Urbanik.

*Id.* The present litigation is not a securities class action. Objector Miorelli provided
sworn statements and credit card records proving his membership in the Class
pursuant to the terms of the Class Notice. This evidence was well beyond the
minimum required by the Class Notice and its veracity was never questioned
below.

   *Paterson v. Texas*, 308 F.3d 448 (5th Cir. 2002) is even less like this case. In
*Paterson*, the class members were Western Union customers who were
overcharged when making money transfers via credit card. *Id.* at 449. The State of
Texas sought to intervene in the case, despite making no claim that it was itself an
injured Western Union customer. *Id.* at 449-50. Texas argued that it could stand in
the shoes of absent Texas class members whose addresses were unknown as the
basis for its argument for standing before the district court. *Id.* at 450. The Fifth

11

Circuit rejected Texas' proposed representative status and dismissed Texas' appeal for want of jurisdiction. *Id.* at 451. Objector Miorelli does not claim any sort of representation-of-others-based standing in this case. He has produced sufficient evidence showing that he is a member of the Class on his own and argues that the District Court misinterpreted the terms of the Settlement Agreement in its ruling.

Appellees' third "non-member" case also is completely unlike this one. In *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989), stockholders sued the company claiming violations of federal securities laws and fraud. *Id.* at 283. The class consisted exclusively of these stockholders. *Id.* A non-stockholder who held bonds in the company filed an "opposition" claiming the settlement would dilute the conversion value of the bonds by depleting the company's assets. *Id.* The Fourth Circuit did not dismiss the appeal but did affirm the dismissal of the objections by the district court. *Id.* at 287. In *Gould*, the objector did not even claim to be a class member: he was a proud interloper. Objector Miorelli has always contended he is a member of the class just like any of the other Target customers who made purchases during the period listed on the class notice or who had their credit cards replaced due to fraud shortly after the data breach.

*In re UnitedHealth Group, Inc. Shareholder Derivative Litig.*, 631 F.3d 913 (8th Cir. 2011) is also unlike this case since the basis for the objection being

12

rejected was that it was not timely filed before the deadline. *Id.* at 916-17. Objector Miorelli timely filed his objection.

Appellees' Motion presents only one case where the objector even alleged itself to be a class member when raising a timely objection. Even that case, however, differs significantly from this one in that the objector there presented grossly insufficient evidence in support of his claim of class membership. Appellees' Motion makes no allegation even remotely similar to the bases upon which the objectors were ruled against in *Feder*, *Paterson*, *Gould*, or *In re UnitedHealth Group*.

## Objector Miorelli is Not a Professional Objector

While Objector Miorelli's personal or emotional reason for objecting in this case has nothing to do with his standing to bring this appeal, he will address Appellees' baseless, false, and defamatory allegations. Objector Miorelli is not a professional objector. This case was Objector Miorelli's first time appearing in person at any class action Fairness Hearing. (Miorelli Declaration at ¶ 4). Objector Miorelli has also never received money associated with objecting to or settling an objection to a federal class action lawsuit. *Id.* at ¶ 2.

Objector Miorelli initially reached out to Mr. Esades, lead counsel for Appellees, offering to discuss low and no-cost ways to improve the settlement agreement, and in so doing, settle Objector Miorelli's objection prior to the

13

Fairness Hearing. *Id.* at ¶ 6-8. Mr. Esades refused even to talk to Objector Miorelli on the phone about any changes to the settlement agreement. *Id.* at ¶ 9. Nevertheless, Mr. Esades regularly averred to the District Court that settlements are favored under the law in his arguments in support of the Settlement Agreement's approval. So, when Mr. Esades begged Objector Miorelli not to appeal in this case, Objector Miorelli made a new (and clearly even less-appreciated) offer to settle to Mr. Esades.

Objector Miorelli believes Mr. Esades and the other plaintiffs' lawyers in this case are receiving an illegal windfall at the expense of the Class. Tying his renewed offer to settle this appeal to the quantum of Objector Miorelli's opinion of the illegal windfall does not make Objector Miorelli a professional objector. It shows that Objector Miorelli believes fervently in the case and cannot be bought for the pittance which professional objectors are often rumored to accept.

None of Appellees' Motion's hyperbole regarding professional objectors has anything to do with Objector Miorelli's standing to bring the instant appeal as explained *supra*. Appellees' Motion makes no legal argument why an offer to settle by Objector Miorelli, on any terms, entitles them to summary dismissal of Objector Miorelli's appeal. Since Appellees' Motion provides no legal argument tying their baseless name-calling to the relief sought, Objector Miorelli hereby

14

moves to strike Paragraphs 19 and 24 of Appellees' Motion and Mr. Esades' declaration as irrelevant and defamatory.

## Conclusion

Objector Miorelli is a member of the Class as defined in the Settlement Agreement. The last date for a Target customer's purchase to qualify them as a Class Member was agreed by Appellees and Target in the Settlement Agreement as December 18, 2013. The Settlement Agreement is unambiguous and contains an integration clause. The declarations of two lawyers in the case, filed after Objector Miorelli's objection was filed, are improper parol evidence and do not change the terms of the Settlement Agreement or the legal import of the terms of the class notice. The District Court also committed error when it refused to consider the alternative ground for Objector Miorelli's Class Membership set forth in Objector Miorelli's filings and oral argument. Appellees' Motion provides no defense for this error from the District Court.

Appellees' Motion also presents no case on point to the facts of this case in support of its argument for dismissal. Binding Supreme Court precedent prohibits dismissal of the appeal on the grounds Appellees' Motion states. Appellees' Motion also contains irrelevant and defamatory statements regarding Objector Miorelli's litigation motivation with no legal argument connecting them to the relief sought.

15

Consequently, Objector Miorelli asks this Court to:

(a) deny Appellees' Motion in its entirety, and

(b) strike paragraphs 19 and 24 of Appellees' Motion and the entirety of Mr.

Esades' Declaration.

Dated: January 6, 2016                    Respectfully submitted,

Sam A. Miorelli (*pro se*)
764 Ellwood Avenue
Orlando, FL 32804
Telephone: 352-458-4092
sam.miorelli@gmail.com

### Certificate of Service for Pro Se Documents

On the 6th day of January, 2016, I filed the following documents:

- Objector's Response to Plaintiffs/Appellees' Motion to Dismiss and Cross Motion to Strike Irrelevant, False, and Defamatory Allegations
- Declaration of Sam A. Miorelli (and attached Exhibits)

with the Clerk of the Court by means of FedEx Express Overnight delivery service.

Pursuant to Local Rule 25B, the Clerk will effect service using CM/ECF on all parties to the case. According to the Clerk's letter dated December 21, 2015, I am the only participant in this case for whom mail service is required and all other participants will receive electronic notice.

Sam A. Miorelli (*pro se*)

16

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 15-3915

---

## IN RE TARGET CORPORATION CONSUMER DATA SECURITY BREACH LITIGATION

MDL No. 14-2522 (PAM/JJK)

SAM A. MIORELLI,

Objector/Appellant

---

Appeal by Objector from Order Granting Final Approval of Class Action Settlement, Judge Paul A. Magnuson

---

## DECLARATION OF SAM A. MIORELLI IN SUPPORT OF RESPONSE TO MOTION TO DISMISS

---

Sam A. Miorelli (*pro se*)
764 Ellwood Avenue
Orlando, FL 32804
Telephone: 352-458-4092

Objector

1

I, Sam A. Miorelli, declare:

1.    I received Appellees' Motion on December 31, 2015 in U.S. First Class Mail.

2.    As shown on the scanned copy of the envelope attached as Exhibit 1, there is no postmark on the envelope to indicate whether Mr. Esades actually mailed the service copy on December 22, 2015 or some later date. I have reason to believe Mr. Esades may not have mailed it on December 22, 2015 as he filed the same day a motion at the District Court which arrived several days earlier, mentioned (but did not provide a copy of) Appellees' Motion, and in the District Court filing swore he provided e-mail service, which I never received despite our obvious ability to communicate with one another via e-mail as shown in his and my declarations filed before this Court.

3.    I have never been paid to settle an objection in a federal class action lawsuit.

4.    My oral presentation to the District Court in this case was my first on-the-record argument in any case in a federal courtroom.

5.    On August 14, 2015, Vincent Esades wrote a letter to me in which he claimed I was not a member of the Class in response to the objection I filed in the case.

2

6.    I replied to Mr. Esades on October 24, 2015 and suggested we have a teleconference to discuss ways to improve the Settlement Agreement for the class as a potential way to settle my objections.

7.    Mr. Esades e-mailed me on November 2, 2015 asking for clarification on my suggested improvements to the Settlement Agreement before scheduling a teleconference.

8.    On November 2, 2015, I replied with three topics which I proposed to be discussed. That e-mail is attached as Exhibit 2.

9.    On November 3, 2015, Mr. Esades rejected even having a telephone call and made his first of many subsequent allegations that I am pursuing this case for a nefarious purpose. Mr. Esades' e-mail is attached as Exhibit 3.

10.    Despite Mr. Esades' vociferous statements to the contrary, I have suffered significant injuries as a result of the Target data breach. I purchased a car in 2014 and at the time of the purchase discovered there were fraudulent listings on my credit report which resulted in me paying a significantly higher interest rate. While I have fixed the credit reports and refinanced the loan to a lower interest rate, I still am paying an above-market rate and spent many hours dealing with the problem.

11.    Mr. Esades has treated me rudely in several other ways during the course of this case, including behavior inside the St. Paul, MN courthouse. The

3

purpose of my e-mail to him in December was a demonstration of my willingness to pursue this litigation vigorously.

12.     While I did not expect Mr. Esades would actually pay me $2 million to withdraw my appeal, I am flattered by his suggestion that I have the requisite skill and experience to be a "professional" anything in federal class action law. I personally think my performance so far has been amateur at best.

13.     I am confident that the underlying Settlement Agreement is illegal and unfair and look forward to presenting my Initial Brief to the Court.

14.     I feel personally responsible to litigate this case on appeal as I am not confident that the other appellants will as effectively or vigorously pursue the problems with the Settlement Agreement and I am the only appealing objector with standing to raise certain deficiencies in the Class Notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th Day of January, 2016, in Orlando, Florida.

_____
Sam A. Miorelli (*pro se*)

4

# Exhibit 1

HEINS MILLS & OLSON, P.L.C.

ATTORNEYS AT LAW

310 CLIFTON AVENUE

MINNEAPOLIS, MINNESOTA 55403

Sam Miorelli
764 Ellwood Avenue
Orlando, FL 32804



**Exhibit 2**


# In re Target Corporation Customer Data Security Breach Litigation

**Sam Miorelli** <sam.miorelli@gmail.com>                    Mon, Nov 2, 2015 at 9:08 PM
To: "Vincent J. Esades" <vesades@heinsmills.com>

Mr. Esades,

While I'm sure you've had time to consider the details of my objection more specifically, I generally see my objections to the settlement as falling into three major categories:

1. Insufficiency of the overall Settlement value to the Class

2. Excessive Attorney's Fees (including, *inter alia*, the total amount as well as the unreasonable opacity of how fees will be split and the lodestar inclusion of low-value law firm participation)

3. Unreasonable restrictions on class recovery procedures (i.e. the requirements of various outrageous declarations from objecting class members and their attorneys which likely decreased class participation, the clear-sailing provision, the unreasonably-low value on class hourly time recovering from identity theft, and lack of clarity in the record of the relative success or lack thereof of class notification and claims against the proposed fund)

I think there is room for improvement on all of those topics. I am open to discussion of improvements to all of these points - several of which could be changed in a way that adds significant class value while remaining generally within the outlines of the proposed Settlement. I also believe that a settlement of my objections would show the Court that Target and the Plaintiff counsel team take the objections of the Class Members seriously and engage in good faith discussions to address them in advance of the fairness hearing.

Obviously I do not intend this e-mail or any of these discussions to waive or in any way limit my objections to the Settlement. However, I believe in the interest of a constructive discussion this is a framework where improvement may be possible.

I'll look forward to discussing them with you soon.

Sam Miorelli, E.I., Esq.
352-458-4092

[Quoted text hidden]

# Exhibit 3



# In re Target Corporation Customer Data Security Breach Litigation

**Vincent J. Esades** <vesades@heinsmills.com>    Tue, Nov 3, 2015 at 12:05 PM
To: Sam Miorelli <sam.miorelli@gmail.com>

Dear Mr. Miorelli:

Thanks you for your email. Based on your demands set forth below, a settlement of your objection is not possible.

I will remind you that, based on your submissions, you are not a Class Member and have thus not released any claims. Your professed belief in your standing does not change the Settlement Class definition or the Release as outlined in the Settlement as the notice clearly outlines and references. The Amended Complaint also clearly alleges that only 56 people were victims of the credit card fraud after December 15 and - as I have told you - you were not one of them. I am not sure why you persist when you have not released your claims. It appears you are pursuing this objection for some other purpose rather than seeking redress for your loss – highlighted by the fact that you made no claim under the Settlement despite your claims of the fraudulent use of your credit card.

**Vincent J. Esades**
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403

# HEINS MILLS & OLSON, P.L.C.

www.heinsmills.com
Phn: (612) 338-4605
Fax: (612) 338-4692

***Privilege and Confidentiality Notice***

The information contained in this e-mail message is attorney-client privileged and/or confidential information intended for the use of the named recipient only. You are hereby notified that any disclosure, copying or distribution of this communication, or the taking of any action based on it, is strictly prohibited. If you have received this communication in error, please immediately notify the sender by replying to this electronic e-mail or call us at (612) 338-4605. Thank you.

**From:** Sam Miorelli <sam.miorelli@gmail.com>
**Date:** Monday, November 2, 2015 at 8:08 PM
**To:** Vincent Esades <vesades@heinsmills.com>
[Quoted text hidden]
[Quoted text hidden]